UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:19-cv155-MOC

**PAUL JEFFREY WYKLE,**

      Plaintiff,

v.                                                                                                    ORDER

**ANDREW SAUL,**
**Acting Commissioner of Social Security,**

      Defendant.

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 9, 11). Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

**I.    Administrative History**

Plaintiff brought this action, under 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of Defendant's final administrative decision denying his November 19, 2015, application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act ("the Act"). Plaintiff's November 25, 2015, DIB application alleged disability onset of August 23, 2015. (Tr. 153). The application was denied initially on January 25, 2016, and, upon reconsideration, on February 29, 2016. (Tr. 15).

Plaintiff timely requested an administrative hearing, which was held on February 7, 2018. (Tr. 29-65). At the administrative hearing, Plaintiff amended his alleged disability onset date to

-1-

the earlier date of January 3, 2012, when he turned age 55.[1] (Tr. 32-33). An administrative law judge (ALJ) rendered a decision denying benefits on June 14, 2018. (Tr. 15-24). In that decision, the ALJ pointed out that Plaintiff's insured status for DIB benefits had expired on December 31, 2014. (Tr. 17, Finding 1). Therefore, Plaintiff would have to show he became disabled on or before that date.

Plaintiff appealed and on April 12, 2019, the Appeals Council denied Plaintiff's request for review, thereby causing the ALJ's decision to become the "final decision" of the Commissioner. (Tr. 1-6). Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g). Defendant has answered Plaintiff's Complaint, and this case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II.     Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the Court adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence.

---

[1] Plaintiff notes in his brief that, had the ALJ made a finding that Plaintiff's RFC was at the light exertional level, Plaintiff would be found "disabled" under the Medical-Vocational Grid Rules at age 55. For this reason, at the hearing, Plaintiff amended his alleged disability onset date in his disability application from August 23, 2015, to January 3, 2012, when he turned age 55. (Tr. 22, Finding 7; 32-33). This amendment served another purpose. Since Plaintiff's DLI was December 31, 2014, (Tr. 17, Finding 1), the August 23, 2015, disability onset date Plaintiff alleged on his November 25, 2015, Title II disability application at issue in this case (Tr. 153) would be post-DLI and, as such, would not entitle Plaintiff to disability benefits at the time of onset initially alleged. (Tr. 33). In other words, if Plaintiff did not amend to claim an earlier disability onset, he would not meet the insured status DIB requirement.

Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

**IV. Substantial Evidence**

**A. Introduction**

The Court has read the transcript of Plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether a court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

**B. Sequential Evaluation**

The Act defines "disability" as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2). To qualify for DIB under Title II of the Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under retirement age, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

     e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### C. The Administrative Decision

In a decision dated June 14, 2018, (Tr. 15-24), the ALJ found that Plaintiff had the following severe impairments: asthma, diabetes, neuropathy, and degenerative disc disease. (Tr. 17, Finding 3). The ALJ also found, with explanation, that based on the medical evidence, "the objective findings in this case fail to support [] the claimant's position and allegations of having disabling mental and/or psychological symptoms and limitations from his alleged onset date . . . through his [DLI] . . . ." (Tr. 20). Thus, these alleged impairments were not included in the list of severe impairments and, therefore, found to be non-severe.

The ALJ further noted that plaintiff "admitted at the hearing that he initially stopped working due to the economic crash of 2009 and was let go at work." (Id.). Plaintiff also testified it was hard to find any work afterwards. (Tr. 60). The ALJ found Plaintiff had the residual functional capacity (RFC)[2] to perform a restricted range of medium exertional work. (Tr. 18, Finding 5). The ALJ limited Plaintiff to frequently pushing and pulling with his lower extremity,

---

[2] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. § 404.1545.

and frequently performing, handling, and fingering bilaterally with his upper extremity. (Id.). Furthermore, the ALJ found that Plaintiff must avoid exposure to respiratory irritants. (Id.).

The ALJ detailed the evidence considered in formulating the RFC. (Tr. 18-22). Therefore, the ALJ performed a functional analysis in determining RFC. The ALJ also noted that Plaintiff had the burden of proving his case by presenting evidence before date last insured ("DLI") for DIB benefits. (Tr. 22).

Based on the established RFC, the ALJ denied benefits at Step 5 of the sequential evaluation process, finding Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 22-23, Finding 10). Having propounded a hypothetical question to the vocational expert (VE) with the established RFC, the VE testified a hypothetical person could perform certain unskilled, light exertional jobs. (Tr. 58-60). The VE identified the jobs of inspector, enumerated in the Dictionary of Occupational Titles (DOT) as DOT number 979.687-030; checker (DOT number 369.687-026); and bagger (DOT number 920.687-014). (Id.). The VE further stated his testimony was consistent with the DOT. (Tr. 62). As a result, the ALJ concluded that Plaintiff was not disabled under the Act.

**V.     Discussion**

As mentioned, to qualify for DIB benefits, Plaintiff must prove he became disabled on or before DLI of December 31, 2014. (Tr. 17, Finding 1). Plaintiff raises three challenges to the ALJ's decision: (1) the ALJ's failure to find certain impairments to be "severe" warrants remand, (2) substantial evidence does not support the ALJ's RFC, and (3) the ALJ erred in weighing the opinions of state agency medical consultants.

**A. The ALJ's Failure to Find Some Impairments "Severe"**

To be deemed a severe impairment, an impairment must meet the regulatory definition of "severe" at 20 C.F.R. § 404.1522, which requires a significant limitation of the claimant's physical or mental abilities to do basic work activities. Second, this significant limitation must be expected to last at least 12 months. Third, any impairment must be medically determinable by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. All of the above must relate to the period before DLI. Plaintiff alleges remand is required to consider the "severity" of plaintiff's obesity and vascular disease. Plaintiff elaborates that, due to vascular disease, he suffers from atherosclerosis, causing intermittent, lower extremity claudication and venous insufficiency, causing lower extremity edema. (Pl. Brief at pp. 13-15). For the following reasons, the Court rejects Plaintiff's claim.

**1. Obesity**

Plaintiff first contends that the ALJ erred in failing to find obesity as a severe impairment. The Court disagrees. As mentioned, Plaintiff was laid off from his prior work due to the economic crash of 2009. (Tr. 20). His prior work was heavy, semi-skilled work on machinery. (Tr. 22, Finding 6). At the administrative hearing, Plaintiff testified he weighed up to 460 pounds. (Tr. 34). The ALJ noted he had weighed 458 pounds on February 22, 2010. (Tr. 51). Thus, he was still able to do his prior, heavy exertional work at that high weight level.

Subsequently, Plaintiff attempted to and did lose weight. Medical records dated March 12, 2012, only two months after his amended disability onset date, noted that he then weighed 378 pounds and was "trying to keep his weight down." (Tr. 275). By September 10, 2012, his weight was down to 357 pounds. (Tr. 242). At the February 7, 2018, hearing, Plaintiff testified he weighed 310 pounds, and he acknowledged he had lost 150 pounds simply by changing his diet. (Tr. 34-35). If Plaintiff could do heavy machinery work at 460 pounds, it makes sense that

Plaintiff could do medium exertional work, as specified in the ALJ's RFC, when weighing some 100-150 pounds less.

Furthermore, the medical records reflect that Plaintiff's weight did not significantly affect functional ability to ambulate. For example, about 3 months before the amended disability onset, an examination at Rutherford Internal Medical Associates by Dr. Seema Daigle on September 22, 2011, found only "trace edema" in the lower extremities with normal gait. (Tr. 280). As noted by the ALJ (Tr. 19), when Dr. Daigle saw Plaintiff on March 27, 2014, Plaintiff denied any major problems (other than being overweight) and stated that since the beginning of that year he and his wife have gone back to "exercising on a regular basis." (Tr. 244). Despite giving a history of vascular disease, Dr. Daigle observed Plaintiff did "not note any significant cramping in his legs with walking." (Id.). Plaintiff told Dr. Daigle "the only time his legs bother him is if he stands for a long period, he'll get some aching in the thigh area bilaterally." (Id.). Furthermore, on examination, he had no peripheral edema. (Id.).

When Dr. Daigle saw Plaintiff on December 2, 2014, a month before DLI, examination revealed that he was exercising regularly and Dr. Daigle again did "not note any significant cramping in his legs with walking." (Tr. 235). In fact, at Carolina Spine Neuro Surgery, almost a year later, on November 13, 2015, despite complaints of leg pain for the past 10 years, (Tr. 363), examination found Plaintiff had a normal gait and station with "no impairment of walking on toes or impairment of walking on heels." (Tr. 365). Examination further revealed no left or right edema. (Id.). Therefore, the medical records show that Plaintiff's obesity did not significantly affect functional ability to ambulate.

Moreover, case law holds that an ALJ may be excused from mentioning a claimant's obesity when he relies on medical records, as herein, that reflect that obesity. See Henson v.

Berryhill, No. 1:15-cv-123, 2017 WL 5195882, at *5 (W.D.N.C. Nov. 9, 2017) (citing Shrewsbury v. Astrue, No. 7:11CV229, 2012 WL 2789719 at *5 (W.D. Va. July 9, 2012) (stating that the ALJ relied on "medical records of the doctors who treated Shrewsbury's obesity," not necessarily medical opinions)). Cf. Pritt v. Comm'r, No. 5:13-cv-43, 2014 WL 284499, at *19 (N.D. W. Va. Jan. 24, 2014) (stating that the ALJ's failure to mention obesity was harmless error as the plaintiff did not specify how obesity limited his functioning); McKinney v. Astrue, No. 1:11-cv-199, 2012 WL 6931344, at *3 (W.D.N.C. Dec. 11, 2012) (stating that remand is not required when ALJ's failure to mention obesity does not affect the outcome of the case).

**2. Vascular Disease**

Plaintiff also contends that, due to vascular disease, he suffers from atherosclerosis, causing lower extremity intermittent claudication, and venous insufficiency, causing lower extremity edema. (Pl. Brief at pp. 13-15). In so alleging, Plaintiff faults the ALJ for confusing neuropathy with vascular disease in his decisional severity Finding and allegedly failing to list vascular disease in that Finding. (Pl. Brief at p. 14; see Tr. 17, Finding 3). For the following reasons, the Court rejects Plaintiff's claim.

**a. Intermittent Claudication**

Plaintiff has been diagnosed with "neurogenic claudication" with spinal stenosis. (Tr. 366). That diagnosis first appears in the medical records in a November 13, 2015, evaluation by Carolina Spine Neurosurgery. (Id.). Neurogenic claudication is different from vascular claudication, which Plaintiff is alleging in his brief. See (Canadian Journal of Surgery, Vol. 56(6) Dec. 2013, pp. 372-77). Neurogenic claudication results from compression of lumbar

-9-

spinal nerves, as opposed to vascular claudication, which results from impaired blood flow to the legs.

Medical records from Dr. Daigle dated November 1, 2016, reflect that an evaluation concluded Plaintiff's claudication was not vascular. (Tr. 549). Medical records from Dr. Daigle dated March 27, 2017, also reflect that Surgeon Taylor opined Plaintiff had neurogenic claudication and "not vascular" claudication. (Tr. 624). Therefore, the ALJ correctly listed neuropathy as a "severe" impairment. Plaintiff's contention of vascular disease producing claudication is incorrect. Here, Plaintiff has lower extremity neurogenic claudication, which was intermittent.

Medical records before DLI (and even after) do not indicate this intermittent claudication limited plaintiff to a more restrictive RFC than found by the ALJ. For example, even after DLI and despite complaints of leg pain for the past 10 years (Tr. 363), a Carolina Spine Neuro Surgery November 13, 2015, examination found Plaintiff had a normal gait and station with "no impairment of walking on toes or impairment of walking on heels." (Tr. 365). On December 11, 2015, Dr. Daigle's notes reflect that Plaintiff "has known peripheral arterial disease which is been stable for years and has had no claudication pains." (Tr. 454). Before DLI, examinations by Dr. Daigle on March 27, 2014, and December 2, 2014, found "no claudication." (Tr. 235, 245).

**b. Lower Extremity Vascular Edema**

The ALJ also did not err by not including lower extremity vascular edema as a "severe" impairment, as the medical records do not reflect a severe vascular disease edema impairment before (or even after) DLI. Before amended onset, an April 22, 2008, Doppler ultrasound indicated no evidence of venous thrombosis in the left leg. (Tr. 336). This ultrasound noted that

"flow to both the posterior tibial and dorsalis pedis is preserved," even though the type of flow may indicate atherosclerotic changes. (Id.). However, no atherosclerotic changes were reflected in functional ability before amended onset. As pointed out, about 3 months before amended disability onset, an examination at Rutherford Internal Medical Associates by Dr. Daigle on September 22, 2011, found only "trace edema" in the lower extremities with normal gait. (Tr. 280). On April 30, 2013, when seen by Dr. Stephen Mekson, Plaintiff had no bilateral edema. (Tr. 263). When Dr. Daigle saw Plaintiff before DLI on March 27, 2014, upon examination, Plaintiff had no peripheral edema, and he told Dr. Daigle that "the only time his legs bother him is if he stands for a long period he'll get some aching in the thigh area bilaterally." (Tr. 244).

If Plaintiff had "severe" lower extremity vascular edema, standing for long periods would aggravate such condition and be contraindicated. The claimant bears the burden to establish how any medically determinable impairments affect functioning. See 20 C.F.R. § 404.1512(c). After DLI, on October 13, 2015, examination at Carolina Spine Neuro Surgery found no pedal edema. (Tr. 394). A Carolina Spine Neuro Surgery November 13, 2015, examination found Plaintiff had no left or right lower extremity edema and normal gait and station. (Tr. 365). Lower peripheral vascular inspection revealed no pigmentation or varicose veins. (Id.). Lower extremity pulses were 2+ (only slightly more diminished than normal). (Id.). A month later, on December 11, 2015, Plaintiff told Dr. Daigle that he "has a history of chronic venous insufficiency, but wears a support hose daily and denies any new ulcers." (Tr. 454). As stated in Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986), "[i]f a symptom can be reasonably controlled by medication or treatment it is not disabling." See also Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965). Therefore, the medical records do not reflect a "severe" vascular disease edema impairment before (or even after) DLI.

**B. The ALJ's RFC Findings**

Plaintiff also argues that the ALJ erred in assessing Plaintiff's RFC. As mentioned, the ALJ found Plaintiff had the RFC to perform a restricted range of medium exertional work. (Tr. 18, Finding 5). The ALJ limited Plaintiff to frequently pushing and pulling with his lower extremity and frequently performing, handling, and fingering bilaterally with his upper extremity. (Id.). Furthermore, Plaintiff must avoid exposure to respiratory irritants. (Id.). As pointed out by the ALJ, state agency medical consultants found insufficient medical evidence before DLI to render an opinion on Plaintiff's functional abilities. (Tr. 22). As pointed out by Plaintiff, Dr. Daigle did not render an opinion as to whether Plaintiff was disabled. (Pl. Br. at p. 20).

However, there is no requirement that an ALJ base his RFC finding, or any particular limitation in it, on a medical opinion. See Felton-Miller v. Astrue, 459 F. App'x 226, 230–31 (4th Cir. 2011) (unpublished) (explaining that an ALJ need not obtain an expert medical opinion to back a particular RFC but should base an individual's RFC on all available evidence); Smith v. Berryhill, No. 3:17-cv-506-FDW, 2018 WL 3447187, at **8–9 (W.D.N.C. July 17, 2018) (same); Griffin v. Comm'r, No. SAG-16-274, 2017 WL 432678, at *3 (D. Md. Jan. 31, 2017) ("[A]n ALJ need not parrot a single medical opinion, or even assign 'great weight' to any opinions, in determining an RFC"; "[i]nstead, an ALJ is required to consider 'all of the relevant medical and other evidence.'") (quoting 20 C.F.R. §§ 404.1545 and 416.945).

Substantial evidence supports the ALJ's RFC and no additional function-by-function analysis is required. In support of his RFC, the ALJ stated:

> The undersigned notes that, although the claimant has received some treatment for his severe impairments, it has been essentially routine in nature. The lack of more aggressive treatment suggests the claimant's symptoms and limitations were not as severe as he alleges. The claimant admitted at the hearing that he initially

stopped working due to the economic crash of 2009 and was let go at work. Further, he testified that during the period of his alleged disability he helped care for his in-laws after he stopped working.

(Tr. 20). Furthermore, as to his ability to perform medium exertional work, which requires frequently lifting 25 pounds, Plaintiff essentially admitted he could do this in an adult function report dated December 12, 2015, where he wrote, "I can lift 25 [pounds] without discomfort." (Tr. 196). In that report, he stated that he mows the lawn, goes regularly to a cardiopulmonary gym, and drives a car and shops 2-3 times a week for whatever is needed. (Tr. 193-194). On March 27, 2014, upon examination, Dr. Daigle found no muscle pain, no joint pain, and no claudication. (Tr. 245). Before DLI, on December 2, 2014, Plaintiff told Dr. Daigle that "he does not have any significant cramping in his legs when walking" and "has been exercising on a regular basis." (Tr. 235).

In sum, Plaintiff's contentions regarding alleged RFC deficiencies are without merit. The ALJ is solely responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c) & 416.946(c). In formulating a RFC, the ALJ is not required to discuss every piece of evidence. See Reid v. Comm'r, 769 F.3d 861, 865–66 (4th Cir. 2014). In making that assessment, the ALJ, however, must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling (SSR) 96-8p at *2.

Furthermore, it is the claimant's burden to establish how any medically determinable impairments affect functioning. See 20 C.F.R. §§ 404.1512(c) & 416.912(c); see also, e.g., Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion . . . to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Plummer v. Astrue, No. 5:11-cv-6, 2011 WL 7938431, at *5 (W.D.N.C. Sept. 26, 2011) (Memorandum and Recommendation) ("[t]he claimant bears the

burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). Also, any "function-by-function" narrative assessment referenced in SSR 96-8p is not an absolute requirement to be applied under all circumstances. For example, it has been held that preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary and not required by SSR 96-8p. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). As the ALJ concluded in this case, "[w]ith the objective evidence showing no significant functional limitations, the claimant has not met the burden of proof showing that his impairments render him disabled." (Tr. 22).

**C. The State Agency Medical Consultants**

Finally, Plaintiff argues that the ALJ gave too much weight to the state agency medical consultants' opinions. As pointed out by the ALJ, the state agency medical consultants found that Plaintiff presented insufficient medical evidence before DLI to render an opinion on Plaintiff's functional abilities. (Tr. 22). The ALJ credited this finding with "great weight" noting "few medical records prior to the expiration of the date last insured." (Id.). The ALJ did not error in assigning significant weight to the consultants' opinions. See Lusk v. Astrue, No. 1:11-cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence). Furthermore, to the extent that Plaintiff argues that there were, in fact, numerous medical records before the expiration of DLI pointing to a finding of disability, this Court, after having examined carefully the medical records, does not agree. As Defendant notes, although Plaintiff did not numerous office visits to Dr. Daigle before the DLI, at no point

burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). Also, any "function-by-function" narrative assessment referenced in SSR 96-8p is not an absolute requirement to be applied under all circumstances. For example, it has been held that preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary and not required by SSR 96-8p. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). As the ALJ concluded in this case, "[w]ith the objective evidence showing no significant functional limitations, the claimant has not met the burden of proof showing that his impairments render him disabled." (Tr. 22).

**C. The State Agency Medical Consultants**

Finally, Plaintiff argues that the ALJ gave too much weight to the state agency medical consultants' opinions. As pointed out by the ALJ, the state agency medical consultants found that Plaintiff presented insufficient medical evidence before DLI to render an opinion on Plaintiff's functional abilities. (Tr. 22). The ALJ credited this finding with "great weight" noting "few medical records prior to the expiration of the date last insured." (Id.). The ALJ did not error in assigning significant weight to the consultants' opinions. See Lusk v. Astrue, No. 1:11-cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence). Furthermore, to the extent that Plaintiff argues that there were, in fact, numerous medical records before the expiration of DLI pointing to a finding of disability, this Court, after having examined carefully the medical records, does not agree. As Defendant notes, although Plaintiff did not numerous office visits to Dr. Daigle before the DLI, at no point

burden of providing evidence establishing the degree to which her impairments limit her RFC") (citing Stormo), adopted, 2012 WL 1858844 (May 22, 2102), aff'd, 487 F. App'x 795 (4th Cir. Nov. 6, 2012). Also, any "function-by-function" narrative assessment referenced in SSR 96-8p is not an absolute requirement to be applied under all circumstances. For example, it has been held that preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary and not required by SSR 96-8p. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). As the ALJ concluded in this case, "[w]ith the objective evidence showing no significant functional limitations, the claimant has not met the burden of proof showing that his impairments render him disabled." (Tr. 22).

**C. The State Agency Medical Consultants**

Finally, Plaintiff argues that the ALJ gave too much weight to the state agency medical consultants' opinions. As pointed out by the ALJ, the state agency medical consultants found that Plaintiff presented insufficient medical evidence before DLI to render an opinion on Plaintiff's functional abilities. (Tr. 22). The ALJ credited this finding with "great weight" noting "few medical records prior to the expiration of the date last insured." (Id.). The ALJ did not error in assigning significant weight to the consultants' opinions. See Lusk v. Astrue, No. 1:11-cv-196-MR, 2013 WL 498797, at *4 (W.D.N.C. Feb. 11, 2013) (expert opinions of agency reviewing physicians may amount to substantial evidence where they represent a reasonable reading of the relevant evidence). Furthermore, to the extent that Plaintiff argues that there were, in fact, numerous medical records before the expiration of DLI pointing to a finding of disability, this Court, after having examined carefully the medical records, does not agree. As Defendant notes, although Plaintiff did not numerous office visits to Dr. Daigle before the DLI, at no point

did Dr. Daigle make a finding that Plaintiff was disabled. Furthermore, as discussed, the substantial evidence supports the ALJ's finding that Plaintiff is not disabled. In sum, this claim is without merit.

## VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Perales, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED;**

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 9) is **DENIED;**

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 11) is **GRANTED;** and

(4) This action is **DISMISSED.**

Signed: February 11, 2020



Max O. Cogburn Jr
United States District Judge